## THE PLEADING OF MALICE IN AN INJURY CASE.

Circuit Court of Cuyahoga County.

THE ROYAL FURNITURE COMPANY v. FRANK S. WEIST.

Decided, November 11, 1912.

*Damages—When Punitive Damages May be Awarded—How Malicious Injury Pleaded.*

1. Punitive damages may be awarded where one in committing a wrong has so conducted himself with regard to another as to show a reckless disregard of such other's rights.
2. Where the facts set forth in a petition show a reckless disregard of plaintiff's rights on the part of the defendant, malice is sufficiently pleaded to support an award of punitive damages.

*A. A. Benesch,* for plaintiff in error.
*Ewing, Counts & Terrell,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

We are asked to reverse a judgment of the municipal court in this case, which was obtained by Frank S. Weist, hereinafter spoken of as the plaintiff, against the Royal Furniture Company, a corporation, hereinafter spoken of as the defendant, which judgment was, upon proceedings in error in the court of common pleas, affirmed.

Plaintiff claimed to recover against the defendant because of the alleged trespass of the defendant, through its agent, in coming into plaintiff's home, and removing certain chattels therefrom, accompanying such removal with excessive force and violence.

The defendant admitted the entry into the plaintiff's house, by its agent, and the removal of certain rugs and carpets therefrom, but claimed a right to make such removal on the ground that the rugs and carpets were the property of the defendant.

The plaintiff claimed that there was removed from his house other property, to-wit, some pieces of jewelry, but the removal of these is denied, and there is no evidence which would justify a finding that there was any jewelry removed. However, as al-

ready said, the carpets and rugs were removed. If they were the property of the defendant, it was because the conditions of a chattel mortgage, given upon said rugs and carpets by the plaintiff to the defendant at the time the rugs and carpets were purchased, had been broken, for they were purchased by the plaintiff from the defendant on or about the 28th day of August, 1911. It is claimed the defendant was, by the terms of said mortgage, authorized to take possession of the property upon condition broken.

This court is without the original bill of exceptions which was filed in the court of common pleas upon proceedings in error in that court, and in a substitute bill the chattel mortgage is not shown, but we believe this is because of the fact that the original mortgage is with the lost bill. But as we view the case, it is not necessary that we should have that mortgage here, because we have a bill which is sufficient for us to consider the case upon another proposition.

The plaintiff recovered a verdict in the court of common pleas for $289, but, as a condition for the overruling of a motion for a new trial, the plaintiff remitted $89 from the verdict, and judgment was entered for $200.

It is urged that this judgment should be reversed first, because it is said there was no evidence introduced showing the value of the goods taken.

There was no evidence tending to show the value of the jewelry taken, and, as has already been said, there was no sufficient evidence that any jewelry was taken. The only evidence as to the value of the goods is that the defendant sold the goods to the plaintiff in August, 1911, for $53; the goods were taken on the 14th of December, 1911. Prior to the 14th day of December, 1911, the plaintiff had paid on the goods $10 and on that day while the goods were being taken from the plaintiff's house the plaintiff's wife was at the store of the defendant and paid $4 more on the purchase price. We think this is some evidence tending to show the value of the goods. But whether this be true or not this judgment is not to be reversed.

If the evidence on the part of the palintiff was believed by the jury, and it well might be when taken in connection with the

testimony of the defendant's agent who removed the goods, the conduct of the agent removing the goods was such as to justify severe punitive damages. It is said that no punitive damages would be allowed in a case like this, because punitive damages can only be allowed where the conduct of a defendant is wilful and malicious, and it is said that the plaintiff in his statement of claim does not charge that what was done by the defendant was done with malice. This would seem to imply that the counsel understand that unless the word "malice" or "malicious" is used, there can be no charge of malicious conduct.

This is not correct. If the facts set out in the plaintiff's statement of claim are true, then the conduct of the defendant's agent in the taking of these goods was malicious in the sense in which that word is used in connection with the subject of punitive damages. One acts maliciously when he so conducts himself with regard to another as to show a reckless disregard of such other's rights. The charge of malice was sufficiently set out in the statement of claim. The testimny of Daniel Barry, who was present in the home of the plaintiff when the goods were taken from the house, is to the effect that without any invitation on the part of anybody on the inside of the house to enter, an agent of the defendant entered the house and removed these rugs and carpets with the assistance of two other men, in such manner as to overset a chair in which there was a baby, throwing said baby onto the floor, disengaging the pipe of a gas stove in such wise as to allow gas in a large quantity to escape, without readjusting said pipe, so jarred or tipped a sideboard standing in part upon one of the rugs as to break dishes. In short, the whole conduct of the defendant's agent in removing those rugs, whatever rights the defendant had in the rugs, and about this we need express no opinion, showed a wanton and reckless disregard for the rights of the plaintiff's family. In his own testimony he says that he was told that the plaintiff's wife had gone to the store of the defendant at that time to pay money on the indebtedness for these rugs, and he said; "it is too late." It turned out that it was not too late, for the defendant had accepted the money when she was at the store.

Reasonable conduct on the part of this collector, or agent, would have required that he communicate with the store be-

fore he proceeded further with the removal of these things. But even if it had been too late, if there had been no possible question as to the right of the defendant to take these goods, there can be no justfication of the conduct of this agent in removing them, if the testimony of Barry is to be believed; and we are not surprised that the jury believéd it as against that of the agent, when, by that agent's testimony, as already shown, he was notified that the plaintiff's wife had gone to the store to make a payment on these goods.

This man was the collector for the defendant, and it looks very much as though, in one respect, he was like the Apostle Paul, when he says: "I magnify mine office."

The judgment of the common pleas court, affirming the judgment of the municipal court, is affirmed.